MASSACHUSETTS LABORERS' DISTRICT COUNCIL & others[1] *vs.*
BOARD OF ELEVATOR REGULATIONS & another.[2]

No. 95-P-376.

Suffolk. September 10, 1996. - December 20, 1996.

Present: DREBEN, JACOBS, & FLANNERY, JJ.

*Board of Elevator Regulations. Statute,* Construction. *Regulation.
Administrative Law,* Regulations.

The board of elevator regulations was without authority under G. L. c. 143,
§ 68, to promulgate an amendment to a regulation, 524 Code Mass.
Regs. § 10.00 (23), requiring that dismantlement or removal of decom-
missioned elevators or elevator equipment be performed only by persons
licensed under G. L. c. 143, § 71B, as elevator mechanics. [807-811]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 8, 1991.

The case was heard by *Hiller B. Zobel,* J., on motions for
summary judgment.

*Amy Spector,* Assistant Attorney General, for the Board of
Elevator Regulations & another.

*Richard A. Fairbrothers* for the Massachusetts Laborers'
District Council & others.

DREBEN, J. In this action, brought by members of the
wrecking industry and their union representatives, a judge of
the Superior Court declared that a regulation of the board of
elevator regulations (board) was invalid in part. The regula-
tion, 524 Code Mass. Regs. § 10.00(23) (1991), set forth in
the margin,[3] requires that only elevator personnel licensed

---

[1]Building Wreckers' Local 1421; The Building Wreckers' Association of
Massachusetts, Inc.; Napoli Companies, Inc.; and Joseph M. Napolitano.

[2]Commissioner of Public Safety.

[3]Title 524 Code Mass. Regs. § 10.00 provides in relevant part:

under G. L. c. 143, § 71B,[4] perform certain demolition work. On cross motions for summary judgment, the judge allowed the plaintiffs' motion, ruling the regulation was invalid

> "to the extent that it requires a person licensed under G. L. c. 143, Sec. 71B to dismantle or remove an elevator or elevator equipment in a building or structure undergoing repairs, renovations or remodeling, or where the hoistway is intended for reuse, after the elevator has been decommissioned (that is, once the elevator car, weights, and cables have been placed at their lowest level in the building or structure)."

In its appeal, the board presses its statutory authority to adopt the regulation.[5] We conclude that the statute enabling the board to issue regulations, when read with the statute requiring licensure of certain elevator personnel, does not authorize the regulation. Accordingly, we affirm the judgment.

We turn first to the enabling act, G. L. c. 143, § 68. See *Simon* v. *State Examrs. of Electricians*, 395 Mass. 238, 242 (1985); *Worcester Sand & Gravel Co.* v. *Board of Fire Prevention Regulations*, 400 Mass. 464, 466 (1987). In relevant part, the statute reads:

> "The following alterations, repairs and replacement of any equipment governed by 524 CMR shall be considered a major alteration and shall be performed by persons with a Massachusetts Elevator license as a construction, maintenance or repair mechanic in accordance with M.G.L. c. 143, § 71B.
>
> " . . .
>
> "(23) Dismantlement or removal of an elevator or any elevator equipment in any building or structure undergoing repairs, renovations or remodeling, or where the hoistway is intended for reuse."

[4]All statutory references are to the 1994 official edition. None has changed since 1991 when the regulation at issue was promulgated.

[5]At the public hearing before the adoption of the regulation, the chair noted that the dispute was between two interest groups, those he called "related to the general labor industry" and those "associated with the elevator industry." See G. L. c. 22, § 11, establishing the composition of the board, *infra,* note 6.

"The board of elevator regulations shall promulgate amendments to the regulations relating to the construction, installation, alteration and operation of all elevators, and relative to the location, design and construction of shafts or enclosures for elevators, safety devices, gates and other safeguards, protection against the elevator or hoisting machinery, and means to prevent the spread of fire . . . ."[6]

See also § 69 which provides the procedure for drafting and issuing amendments to the regulations.

The licensing statute to which the judge and the disputed regulation refer, G. L. c. 143, § 71B, is administered by the board of examiners, and not the board of elevator regulations.[7] Section 71B provides in relevant part:

"No person shall work as an elevator constructor, maintenance man and repairman in the construction, maintenance or repair of elevators unless he holds a license therefor granted by the board."

The statute is a penal one as § 71D provides for a fine of not less than $500 nor more than $1,000 for anyone working "as a constructor, maintenance man and repairman in the

[6]Section 68 sets forth the board's authority in terms of *amending* regulations because regulations were first promulgated by the board in response to St. 1913, c. 806, §§ 6-8, a statute establishing the board as a temporary administrative body.

The board became permanent under St. 1945, c. 643, and pursuant to G. L. c. 22, § 11, consists of eight members: "One . . . the chief of inspections in said department [of public safety] . . . , one . . . a consulting engineer, one the building commissioner of Boston, one the inspector of buildings of some city or town other than Boston, one a representative of a liability insurance company licensed to write elevator insurance in the commonwealth, one a representative of elevator manufacturers, one an experienced elevator constructor, and one representative of owners of buildings subject to chapter one hundred and forty-three."

Section 11 also provides that "[n]o member shall act as a member of the board, or vote as such, in connection with any matter as to which his private right, distinct from the public interest, is immediately concerned."

[7]The board of examiners was established by St. 1957, c. 637, § 2, to administer the licensing of elevator mechanics. See G. L. c. 143, § 71H. The board of elevator regulations has jurisdiction over appeals by persons aggrieved by the action of the board of examiners in denying, revoking, or suspending a license. G. L. c. 143, § 71C(1).

construction, maintenance or repair of elevators without a license."

Both § 68, the enabling act, and § 71B, the licensing act, use similar terms — § 68 speaks of "construction, installation, alteration and operation" of elevators, and § 71B of "construction, maintenance or repair." Neither refers to removing or dismantling elevators.

Moreover, long-standing practice supports the wreckers' claims that the regulation is unauthorized. See *Simon* v. *State Examrs. of Electricians,* 395 Mass. at 246 ("want of assertion of power by those who presumably would be alert to exercise it is . . . significant"). An affidavit of one of the plaintiffs,[8] which appears uncontested, avers that, until paragraph 23 of the regulation was added, "there was never any question that removal of elevators was part of a demolition contractor's work," whether the building was to be demolished or gutted out and renovated.

The board seeks to sustain its regulation on two grounds. First it claims that since elevator equipment removed from a building may be reinstalled in other buildings following decommissioning, the regulation falls within the board's statutory authority. This argument appears specious since installing (or reinstalling) an elevator is governed by G. L. c. 143, §§ 62-63, and requires both inspection and certification prior to use.

The board also argues that the regulation is directly related to its statutory authority to adopt regulations relating to "protection against the elevator or hoisting machinery and means to prevent the spread of fire." G. L. c. 143, § 68. The board's safety argument relies heavily on the affidavit submitted by board chairman Edward Sullivan, the "experienced elevator constructor," who, because of his private interest, "excused himself from the board" at the public hearing on the regulations. See note 6, *supra.* Sullivan's affidavit recounted one incident where unlicensed laborers removed some elevator equipment with a torch causing electric wiring to catch on fire. It was his "opinion" that licensed elevator personnel would not have used a torch.

Sullivan's safety concern may be overstated as evidenced by

---

[8]The transcript of the public hearing before the board was before the judge hearing the cross motions for summary judgment. It contains the affidavit of the plaintiff Joseph M. Napolitano.

the following comments made at the public hearing by the chairman of the meeting, the building inspector of Danvers: "[A]ll of the accidents that were reported seemed to occur when the car of the elevator was in some position other than at its lowest level parked, so to speak, or as the code refers to it, placed out of service." See 524 Code Mass. Regs. § 11.00 (1986) ("Elevators Placed Out of Service"). The building inspector saw no need for the requirement of a licensed elevator constructor once the safety precautions of placing the cab and counterweights at their lowest level were taken. In this connection, we note that under the judge's order the decommissioning of elevators, the more dangerous portion of the operation, is left to licensed elevator personnel.

Even if Sullivan's opinion that licensed elevator personnel would not have used a torch on electric wiring is taken as valid, see *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 438 (1995) (on summary judgment review is in the light most favorable to the nonmoving party), there is no reason why safety regulations may not be propounded to apply to nonlicensed as well as to licensed elevator personnel.[9]

The question here, as in *Simon* v. *State Examrs. of Electricians*, 395 Mass. at 242 & 249, a case upon which the plaintiffs rely, is whether the Legislature intended a broad or narrow reach to the terms of the enabling act, particularly in view of the penal licensure provision. *Simon* instructs, at 249, that where, as here, the licensure statute is penal, it "must be as strictly construed as a criminal law." We conclude that, although the board's claim of authority under §§ 68 and 69 is entitled to some weight, the statutes do not give it the authority to accord to licensed elevator workers such exclusive func-

---

[9]See, e.g., 780 Code Mass. Regs. § 116.1 (1991) which provides:

"Before a building or structure can be demolished or removed, the owner or agent shall notify all utilities having service connections within the building or structure, such as; water, electric, gas, sewer and other connections. A permit to demolish or remove a building or structure shall not be issued until a release is obtained from the utilities, stating that their respective service connections and appurtenant equipment, such as: meters and regulators have been removed or sealed and plugged in a safe manner."

tions as it ordered. Neither the literal words of the enabling act nor Legislative policy suggests that the Legislature intended the board to grant elevator personnel a legal monopoly over removal of elevators by extending the licensure act. See *Simon, supra* at 249.[10]

*Judgment affirmed.*

---

[10]In view of our decision, we need not reach the plaintiffs' constitutional claims.